

RECEIVED LJ
9/7/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRAVIS L. ALLISON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 1:25-cv-10795 |
| v. | ) | Judge Jeffrey I Cummings |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| Greystar Real Estate Partners , et al. | ) | RANDOM / Cat. 2 |
| Defendant(s). | ) | |

### Introduction and Jurisdiction

1. This is a civil action for damages, injunctive relief, and declaratory judgment arising

   from a pattern of unlawful conduct by Greystar Real Estate Partners and its agents in

   connection with the leasing, management, and eviction of Plaintiff from Unit 1813 at

   1401 South State Street, Chicago, Illinois. Jurisdiction is proper in this Court

   pursuant to 28 U.S.C. § 1331, as Plaintiff asserts claims under federal law, including

   violations of the Fair Housing Act (42 U.S.C. § 3601 et seq.), 42 U.S.C. § 1983, and

   the Fourth and Fourteenth Amendments to the United States Constitution.

   Supplemental jurisdiction over related state law claims is invoked under 28 U.S.C. §

   1367.

2. Plaintiff's claims are further supported by the existence of a pending federal civil

   rights action in the United States District Court for the Northern District of Illinois,

   Case No. 25-cv-00427, arising from the same facts and property at issue herein.

Additionally, Plaintiff has an open investigation with the U.S. Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section (Report No. 648871-GNF), which is actively reviewing the conduct of Defendants for potential federal enforcement action. The intersection of these proceedings underscores the federal interest in the preservation of evidence and the adjudication of Plaintiff's constitutional and statutory rights.

3.  Venue is proper in this district as the events giving rise to the claims occurred in Chicago, Illinois, and all parties reside or conduct business within this jurisdiction.

**Parties**

4.  Plaintiff: Travis L. Allison is an individual residing in Chicago, Illinois, and is the father and legal guardian of a minor. At all relevant times, Plaintiff was a tenant of Unit 1813 at 1401 South State Street, Chicago, Illinois, and is the victim of the conduct described herein.

5.  Defendants: Greystar Real Estate Partners, LLC, is a national property management company with its principal place of business at [Greystar Headquarters Address], and operates, manages, and leases residential properties in Illinois, including the subject property at 1401 South State Street.

    Greystar Illinois Management LLC, as agent for GSIC II 1401 S State LLC, is the

entity responsible for day-to-day management and enforcement of lease terms at the subject property.

6. Emily Coates is an employee and agent of Greystar, serving as property manager during the relevant period, and is sued in her individual and official capacities for her role in the alleged misconduct.

7. Other agents, employees, and affiliated entities of Greystar may be named as defendants as discovery reveals their involvement in the pattern of violations described herein.

8. Defendants are collectively responsible for the acts and omissions that form the basis of this complaint, including but not limited to the concealment of hazardous conditions, retaliatory conduct, procedural abuses, and the destruction and withholding of Plaintiff's property and evidence.

## Factual Background

### A. Lease, Marketing, and Initial Discovery of Defects

9. In May 2024, Plaintiff Travis L. Allison entered into a residential lease for Unit 1813 at 1401 South State Street, Chicago, Illinois, a property managed by Greystar Real Estate Partners and its affiliates. The unit was marketed as a modern, secure, and professionally managed apartment within a luxury building. Plaintiff, seeking a safe

and stable home for himself and his minor child, relied on these representations in executing the lease.

10. Upon moving in, Plaintiff immediately discovered that the actual condition of the unit and building was grossly misrepresented. The apartment suffered from numerous, serious defects that were deliberately concealed prior to leasing, including but not limited to:

I.   Unstable and unleveled flooring throughout the unit, creating safety hazards.

II.  Exposed electrical wiring and evidence of prior electrical fires, including a nonfunctional microwave and persistent electrical issues.

III. Foul odors emanating from the garage and plumbing, with pipes visibly taped together as makeshift repairs.

IV.  Water damage, mold, and other signs of chronic neglect.

V.   Expired elevator licenses, with elevators operating in violation of municipal safety codes for months, if not years.

11. Only partial building renovations, with select tenants such as a well-known ABC 7 news anchor receiving upgraded, habitable units, while Plaintiff and similarly situated tenants were relegated to unrenovated, hazardous sections.

12. Plaintiff documented these conditions through photographs, video recordings (including footage from his Blink surveillance camera), and written correspondence, all of which are available as evidence.

**B. Escalation of Hostility and Retaliation**

13. After discovering these defects, Plaintiff promptly submitted formal complaints and repair requests to Greystar management. Rather than address the issues, Defendants responded with resistance, intimidation, and escalating hostility. The original property manager with whom Plaintiff signed the lease was removed by Greystar, and Emily Coates was installed as the new property manager. Under Ms. Coates's management, conditions deteriorated further:

I.   Plaintiff received vague and misleading notices about repairs, including a purported "sprinkler inspection" that later became the pretext for an unlawful entry.

II.  Maintenance requests were ignored or denied, and the environment became increasingly hostile.

III. Plaintiff was locked out of the building on multiple occasions by Ms. Coates, sometimes with his minor child present, including during inclement weather (e.g., Thanksgiving 2024).

IV.  Uninvited and unlisted guests were permitted entry to harass and threaten Plaintiff, incidents which were captured on video.

V.  Plaintiff's mail and packages were withheld, and he was denied access to community amenities, forcing him to pay for external gym memberships.

VI.  Plaintiff's unit was subject to unauthorized entry, with the door's peephole drilled out and locks changed without proper notice or consent.

VII. Throughout this period, Plaintiff continued to document all incidents, communications, and building conditions, preserving a detailed record of the ongoing neglect and retaliation.

## C. The December 2, 2024 Incident and Its Aftermath

14.  On December 2, 2024, an incident occurred involving the Chicago Police Department and property management, which, while being litigated separately, marked a pivotal escalation in Defendants' treatment of Plaintiff. Following this event, Defendants intensified their campaign of retaliation, treating Plaintiff as a problem to be silenced rather than a tenant entitled to safe and habitable housing. Maintenance was further withheld, and Plaintiff's efforts to assert his rights were met with legal threats and intimidation.

## D. Procedural Abuses and Eviction Proceedings

15. Despite Plaintiff's attempts to resolve matters lawfully, Greystar initiated eviction proceedings in early 2025. Plaintiff filed a Motion to Quash Service on April 23, 2025, citing improper notice and lack of jurisdiction, but the motion was never heard. The case was transferred to a new courtroom without Plaintiff's knowledge, and a hearing was held on June 17, 2025, in Plaintiff's absence due to lack of proper service or notification.

16. Upon learning of the proceeding, Plaintiff immediately filed a Motion to Vacate, but by that time, Greystar had already moved to enforce possession. On June 27, 2025, Judge Kristi Butler ruled against Plaintiff, disregarding his legal filings, ruling on a motion that had been withdrawn, and dismissing the relevance of Plaintiff's ongoing federal case. Plaintiff's subsequent Motion to Reconsider, Motion for Substitution of Judge & Motion for Temporary Restraining Order were all denied.

**E. Forcible Eviction and Loss of Property**

17. On July 22, 2025, the Cook County Sheriff executed a forcible eviction. Plaintiff and his minor child were removed from their home without any meaningful opportunity to collect their belongings, many of which held personal, financial, and legal significance. Among the most critical items was Plaintiff's Blink surveillance camera, which contained months of footage documenting the deteriorating apartment conditions, repair requests, Greystar's notices, interactions with staff, and evidence relevant to pending lawsuits. This camera and its contents were left behind or taken

during the eviction and have never been returned, despite repeated requests for preservation and access.

18. Greystar has refused all requests to preserve, return, or provide a copy of the camera's contents, thereby depriving Plaintiff of crucial evidence in multiple ongoing legal proceedings and compounding the harm caused by the eviction.

**F. Post-Eviction Hardship and Continuing Harm**

19. Since the eviction, Plaintiff has been displaced and forced to seek shelter wherever possible first in hotels (where his child was bitten by bedbugs and essential property was lost), and eventually living out of his car. Plaintiff has suffered severe emotional distress, humiliation, and hardship, all while attempting to maintain legal battles, protect his child, and navigate multiple court cases without access to the very property Greystar helped destroy or conceal.

20. Defendants' actions through malicious neglect, misuse of the court system, and spoliation of evidence have interfered with Plaintiff's civil rights, right to due process, access to justice, and ability to recover from this targeted and coordinated abuse. The harm is ongoing, and Plaintiff continues to pursue accountability under state and federal law for the pattern of misconduct described herein.

**G. Timeline of Key Events**

I. May 2024: Plaintiff signs lease and moves into Unit 1813 at 1401 South State Street.

II.  May–Fall 2024: Discovery of uninhabitable conditions; formal complaints submitted; management change to Emily Coates.

III.  Fall 2024–December 2024: Escalation of hostility, retaliation, and neglect; December 2, 2024 incident with CPD.

IV.  Early 2025: Eviction proceedings initiated; procedural abuses and denial of due process.

V.  June 17, 2025: Hearing held without Plaintiff's knowledge or appearance.

VI.  June 27, 2025: Adverse ruling by Judge Kristi Butler; all post-judgment relief denied.

VII. July 22, 2025: Forcible eviction executed; loss of home and property, including critical evidence.

VIII. Post-July 2025: Ongoing displacement, hardship, and legal battles; continued refusal by Greystar to preserve or return property and evidence.

21.  This factual background is supported by extensive evidence, including photographs, video recordings, correspondence, court filings, and other documentation, all of which will be referenced and incorporated in subsequent sections of this complaint.

**Legal Violations and Claims**

22. Plaintiff asserts the following causes of action against Greystar Real Estate Partners, Greystar Illinois Management LLC, GSIC II 1401 S State LLC, Emily Coates, and all agents and employees responsible for the conduct described herein. Each claim is supported by specific factual allegations, statutory authority, and controlling case law.

**I. Violations of Federal Civil Rights Statutes**

**A. 42 U.S.C. § 1983 – Deprivation of Constitutional Rights**

23. Defendants, acting under color of state law in concert with law enforcement and through misuse of judicial process, deprived Plaintiff of rights secured by the Constitution, including the Fourth and Fourteenth Amendments.

24. Elements: (1) conduct under color of state law; (2) deprivation of rights, privileges, or immunities secured by the Constitution or federal law.

25. Supporting Facts: Defendants enlisted law enforcement to effectuate unlawful entry and eviction, participated in proceedings that denied Plaintiff due process, and engaged in retaliatory conduct for Plaintiff's exercise of protected rights.

26. Legal Authority: Monroe v. Pape, 365 U.S. 167 (1961); Soldal v. Cook County, 506 U.S. 56, 61–62 (1992) (Fourth Amendment protects against unreasonable seizure of property in eviction context); Fuentes v. Shevin, 407 U.S. 67, 80-81 (1972) (due process required before deprivation of property).

**B. Fair Housing Act (42 U.S.C. § 3601 et seq.)**

27. Defendants discriminated against Plaintiff in the terms, conditions, and privileges of rental housing, and engaged in retaliation for Plaintiff's protected activity.

28. Elements: (1) Plaintiff is a member of a protected class or engaged in protected activity; (2) Defendants discriminated or retaliated in housing practices; (3) discrimination or retaliation was intentional or had a disparate impact.

29. Supporting Facts: Selective renovations and maintenance favored tenants with media connections, while Plaintiff was relegated to hazardous, unrenovated units. Plaintiff's complaints about habitability and rights were met with hostility and adverse action, including eviction and denial of amenities.

30. Legal Authority: 42 U.S.C. § 3617 (prohibiting retaliation for exercise of rights under the Act); Bloch v. Frischholz, 587 F.3d 771, 783 (7th Cir. 2009) (retaliation actionable under FHA).

**II. Constitutional Violations**

31. A. Fourth Amendment – Unreasonable Search and Seizure

32. Defendants, in concert with law enforcement, effected a forced entry and seizure of Plaintiff's home and property without lawful justification or due process.

33. Supporting Facts: Unlawful entry under pretext of repairs, use of police to intimidate and remove Plaintiff, seizure and destruction of personal property, including evidence.

34. Legal Authority: Soldal v. Cook County, 506 U.S. 56 (1992) (Fourth Amendment applies to seizures of property in eviction); Camara v. Municipal Court, 387 U.S. 523 (1967) (warrantless entry into home presumptively unreasonable).

**B. Fourteenth Amendment – Due Process**

35. Plaintiff was deprived of property and liberty interests without notice, opportunity to be heard, or fair process.

36. Supporting Facts: Plaintiff's Motion to Quash Service was never heard; hearings were held without proper notice; eviction was executed without meaningful opportunity to collect property or present defenses; post-eviction, Defendants refused to return or preserve evidence.

37. Legal Authority: Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (due process requires notice and opportunity to be heard); Logan v. Zimmerman Brush Co., 455 U.S. 422, 429 (1982) (right to be heard at a meaningful time and in a meaningful manner).

**III. Violations of Illinois Landlord-Tenant Law**

## A. Breach of Implied Warranty of Habitability

38. Defendants failed to maintain the premises in a habitable condition as required by Illinois law.

39. Supporting Facts: Unstable flooring, exposed wiring, water damage, mold, expired elevator licenses, and other hazardous conditions were concealed and left unremedied despite repeated complaints.

40. Legal Authority: Jack Spring, Inc. v. Little, 50 Ill. 2d 351 (1972) (implied warranty of habitability in every residential lease); 765 ILCS 742/5.

## B. Retaliatory Eviction and Harassment

41. Defendants retaliated against Plaintiff for exercising his rights by escalating hostility, withholding repairs, and initiating eviction.

42. Supporting Facts: Plaintiff's documentation and complaints were met with lockouts, denial of amenities, and eventual eviction.

43. Legal Authority: 765 ILCS 720/1 et seq. (prohibiting retaliatory conduct); Spadoni v. Eastman, 800 F.3d 636 (7th Cir. 2015) (retaliation actionable under Illinois law).

## C. Violation of the Chicago Residential Landlord and Tenant Ordinance (RLTO)

44. Defendants violated multiple provisions of the RLTO, including failure to maintain the premises, improper lockouts, and failure to provide reasonable opportunity to retrieve property post-eviction.

45. Supporting Facts: Lockouts, denial of access, and threats to dispose of property without reasonable accommodation or consideration of pending litigation.

46. Legal Authority: Chicago Municipal Code § 5-12-070 (landlord's duty to maintain); § 5-12-130(f) (disposal of property); Allen v. Lin, 356 Ill. App. 3d 405 (1st Dist. 2005) (strict compliance required).

## IV. Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.)

47. Defendants engaged in deceptive and unfair practices by misrepresenting the condition of the apartment, concealing defects, and failing to deliver the promised quality of housing.

48. Supporting Facts: Marketing the unit as luxury and habitable while concealing known hazards; failure to disclose expired elevator licenses and chronic defects; selective renovations and disparate treatment of tenants.

49. Legal Authority: 815 ILCS 505/2 (prohibiting deceptive acts in trade or commerce); Connick v. Suzuki Motor Co., 174 Ill. 2d 482, 501 (1996) (material omissions actionable).

**V. Common Law Claims**

**A. Conversion**

50. Defendants wrongfully exercised dominion and control over Plaintiff's personal property, including the Blink surveillance camera and other belongings, depriving Plaintiff of their use and value.

51. Supporting Facts: Property was seized during eviction, not returned despite repeated requests, and is presumed destroyed or concealed.

52. Legal Authority: Cirrincione v. Johnson, 184 Ill. 2d 109, 114 (1998) (elements of conversion: unauthorized and wrongful assumption of control over another's property).

**B. Breach of Bailment**

53. By taking possession of Plaintiff's property during and after eviction, Defendants became bailees with a duty to safeguard and return the property, which they breached by failing to preserve or return it.

54. Supporting Facts: Plaintiff's property was left in the unit or taken by Defendants, who failed to provide an inventory, access, or return.

55. Legal Authority: American Ambassador Casualty Co. v. City of Chicago, 205 Ill. App. 3d 879, 883 (1st Dist. 1990) (bailment arises when property is delivered for a specific purpose and not returned).

**C. Spoliation of Evidence**

56. Defendants destroyed or failed to preserve evidence material to Plaintiff's ongoing legal proceedings, including the contents of the Blink camera and other documentation.

57. Supporting Facts: Plaintiff repeatedly notified Defendants of the evidentiary value of the property and pending litigation; Defendants refused to preserve or return evidence, impeding Plaintiff's ability to prosecute claims.

58. Legal Authority: Shimanovsky v. General Motors Corp., 181 Ill. 2d 112, 123 (1998) (duty to preserve evidence when litigation is pending or reasonably anticipated); Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (spoliation sanctions appropriate for destruction of evidence).

**VI. Pattern of Retaliation, Negligence, and Obstruction**

59. The above violations are not isolated incidents but constitute a deliberate and coordinated pattern of misconduct by Defendants, designed to silence Plaintiff, deprive him of his rights, and obstruct justice. This pattern is evidenced by:

I.  Concealment of hazardous conditions and selective maintenance.

II. Escalating retaliation in response to Plaintiff's protected activity.

III. Procedural abuses in eviction proceedings, including denial of due process.

IV. Destruction and withholding of material evidence, despite notice of pending federal and DOJ investigations.

60. Defendants' conduct demonstrates willful disregard for Plaintiff's rights under federal and state law, and warrants the imposition of compensatory, punitive, and injunctive relief.

**Pattern and Practice of Misconduct**

61. Defendants' conduct toward Plaintiff was not the result of isolated mistakes or one-off incidents, but rather a sustained, coordinated pattern of misconduct that permeated every aspect of Plaintiff's tenancy and subsequent eviction. This pattern is evidenced by repeated concealment of hazardous conditions, selective and discriminatory maintenance, escalating retaliation, procedural irregularities in the eviction process, and the deliberate destruction and withholding of material evidence.

The cumulative effect of these actions demonstrates a willful disregard for Plaintiff's rights under federal and state law, and supports the imposition of enhanced remedies.

## I. Concealment of Hazardous Conditions and Selective Maintenance

62. From the outset, Defendants concealed serious defects in Unit 1813 and the building at large, including unstable flooring, exposed electrical wiring, water damage, mold, and expired elevator licenses. These conditions were deliberately omitted from marketing materials and lease negotiations, depriving Plaintiff of the ability to make an informed decision about his housing. Once discovered, Defendants failed to remediate these hazards, instead reserving repairs and upgrades for select tenants with media connections or public platforms, such as the ABC 7 anchor referenced in Plaintiff's complaint. This selective maintenance created a two-tiered system within the building, where favored tenants received habitable, renovated units, while Plaintiff and others were relegated to unsafe, neglected spaces.

63. Such conduct constitutes a violation of the implied warranty of habitability and the Chicago RLTO, which require landlords to maintain all rental units in a safe and habitable condition, without discrimination or favoritism. The pattern of selective repairs and concealment of defects is further evidence of intentional misconduct, as recognized in Jack Spring, Inc. v. Little, 50 Ill. 2d 351 (1972), and Allen v. Lin, 356 Ill. App. 3d 405 (1st Dist. 2005), which hold landlords strictly liable for failing to disclose and remedy hazardous conditions.

**II. Retaliatory Conduct and Hostility**

64. Plaintiff's efforts to document and report these conditions were met not with remediation, but with escalating hostility and retaliation. After the management change to Emily Coates, Plaintiff experienced a marked increase in adverse treatment, including:

V. Lockouts from the building and unit, sometimes with his minor child present and during inclement weather.

VI. Withholding of mail and packages, denial of access to amenities, and forced payment for services that should have been included in the lease.

VII. Permitting uninvited guests to enter and harass Plaintiff, captured on surveillance footage.

VIII. Unauthorized entry into Plaintiff's unit, including drilling out the peephole and changing locks without notice or consent.

65. These actions were not only retaliatory, but also calculated to intimidate and silence Plaintiff, in direct response to his protected activity under the Fair Housing Act and Illinois law. The pattern of retaliation is actionable under 42 U.S.C. § 3617 and 765 ILCS 720/1 et seq., as well as under Bloch v. Frischholz, 587 F.3d 771 (7th Cir.

2009), and *Spadoni v. Eastman*, 800 F.3d 636 (7th Cir. 2015), which recognize retaliation and harassment as independent grounds for liability.

### III. Procedural Irregularities and Abuse of the Eviction Process

66. Defendants' misconduct extended into the judicial process, where they engaged in procedural abuses designed to deprive Plaintiff of a fair hearing and meaningful opportunity to defend his rights. These abuses included:

IX. Initiating eviction proceedings based on improper service and defective notice, as evidenced by Plaintiff's unaddressed Motion to Quash Service.

X. Transferring the case to a new courtroom and holding hearings without Plaintiff's knowledge or appearance, in violation of due process.

XI. Obtaining adverse rulings from Judge Kristi Butler, who disregarded Plaintiff's filings, ruled on withdrawn motions, and dismissed the relevance of ongoing federal litigation.

XII. Denying all post-judgment relief, including motions to vacate, reconsider, and substitute judge, despite clear evidence of procedural unfairness.

67. Such conduct constitutes a violation of the Fourteenth Amendment's guarantee of due process, as articulated in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), and *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). The

systematic denial of notice, opportunity to be heard, and fair adjudication is further

evidence of a pattern and practice of obstruction and abuse.

## IV. Destruction and Withholding of Evidence (Spoliation)

68. The culmination of Defendants' misconduct occurred during and after the forcible

eviction, when Plaintiff was removed from his home without any meaningful

opportunity to collect his belongings, including critical evidence such as the Blink

surveillance camera. Despite repeated requests, Defendants have refused to preserve,

return, or provide access to this evidence, which contains months of documentation

relevant to Plaintiff's claims and ongoing litigation.

69. The deliberate destruction and withholding of material evidence constitutes

spoliation, actionable under Illinois and federal law. As held in Shimanovsky v.

General Motors Corp., 181 Ill. 2d 112 (1998), and Silvestri v. General Motors Corp.,

271 F.3d 583 (4th Cir. 2001), parties are under a duty to preserve evidence when

litigation is pending or reasonably anticipated. Defendants' refusal to comply with

this duty, despite notice of Plaintiff's federal case and DOJ investigation, is further

evidence of bad faith and intentional obstruction.

## V. Systemic and Corporate Misconduct

70. The above violations are not the product of individual negligence, but reflect a

broader corporate policy and practice of disregard for tenant rights, fair housing

standards, and legal obligations. Greystar, as a national property management

company, is responsible for the acts of its agents and employees, and for the

implementation of policies that resulted in the concealment of hazards, selective

maintenance, retaliation, procedural abuses, and spoliation of evidence.

71. Courts have recognized that a pattern and practice of misconduct by a corporate

defendant warrants enhanced remedies and judicial scrutiny. See International

Brotherhood of Teamsters v. United States, 431 U.S. 324 (1977) (pattern or practice

of discrimination establishes liability under federal law); Connick v. Suzuki Motor

Co., 174 Ill. 2d 482 (1996) (systemic deceptive practices actionable under consumer

fraud statutes).

## VI. Federal Oversight and Ongoing Investigation

72. The seriousness and systemic nature of Defendants' misconduct is underscored by the

ongoing federal civil rights action (Case No. 25-cv-00427) and the open investigation

by the U.S. Department of Justice, Civil Rights Division (Report No. 648871-GNF).

These proceedings reflect not only the individual harm suffered by Plaintiff, but also

the broader public interest in holding corporate landlords accountable for patterns of

abuse, discrimination, and obstruction of justice.

73. In sum, Defendants' conduct constitutes a deliberate, coordinated pattern of

misconduct that violated Plaintiff's rights under federal and state law, caused lasting

harm, and warrants the imposition of compensatory, punitive, and injunctive relief. The evidence demonstrates that these violations were not isolated, but part of a systemic practice designed to silence, displace, and deprive Plaintiff of his rights and remedies.

## Evidence and Supporting Documents

74. Plaintiff's claims are substantiated by a robust and meticulously preserved body of evidence, which demonstrates the factual basis for each allegation and the systemic nature of Defendants' violations. The following categories of evidence are incorporated by reference and will be produced in discovery or as exhibits at trial:

## I. Photographic and Video Documentation

**Condition of Premises:**

**75.** High-resolution photographs and video recordings taken by Plaintiff throughout the tenancy, documenting uninhabitable conditions in Unit 1813 and common areas, including unstable flooring, exposed wiring, water damage, mold, taped plumbing, and expired elevator licenses. These materials establish the hazardous state of the premises and the selective nature of renovations.

**Surveillance Footage:**

76. Video files from Plaintiff's Blink surveillance camera system, capturing interactions with management, unauthorized entries, lockouts, and incidents of harassment. This footage is particularly critical to claims of retaliation, denial of access, and spoliation, as it includes evidence of both the conditions and Defendants' conduct. Plaintiff has repeatedly demanded preservation and return of this footage, which Defendants have refused, raising spoliation concerns.

**Incident Recordings:**

77. Recordings of specific events, such as lockouts during inclement weather, unauthorized entry, and confrontations with uninvited guests, as well as documentation of the eviction process and the removal of Plaintiff's property.

**II. Written Correspondence and Communications**

**Formal Complaints and Repair Requests:**

78. Copies of written complaints, maintenance requests, and repair logs submitted by Plaintiff to Greystar and its agents, detailing the defects and hazards in the unit and building.

**Management Responses:**

**79.** Emails, letters, and notices from Greystar management and Emily Coates, including

vague or misleading repair notices, threats of legal action, and correspondence related

to the purported "sprinkler inspection" and subsequent incidents.

**Lockout and Access Denial Notices:**

**80.** Written communications documenting instances where Plaintiff was locked out of the

building or denied access to amenities.

**Preservation Demands:**

**81.** Letters and emails from Plaintiff to Defendants demanding preservation of property

and evidence, including the Blink camera and its contents, and Defendants' responses

or refusals.

**III. Court Orders and Legal Filings**

**Eviction Proceedings Record:**

**82.** Certified copies of all pleadings, motions, and orders from the Cook County eviction

case, including Plaintiff's Motion to Quash Service, Motion to Vacate, Motion to

Reconsider, Motion for Substitution of Judge, and Notice of Appeal. These

documents evidence the procedural irregularities, denial of due process, and the

court's disregard for Plaintiff's defenses and ongoing federal litigation.

**Federal Civil Rights Action:**

83. Filings from Plaintiff's pending federal case (Case No. 25-cv-00427, N.D. Ill.), which arise from the same facts and property at issue, and reference the evidentiary value of the property wrongfully withheld or destroyed by Defendants.

**Appellate Filings:**

84. Motions, emergency requests, and orders from the Illinois Appellate Court, including Plaintiff's efforts to obtain injunctive relief to preserve property and evidence, and the court's responses.

**IV. Official Investigations and Agency Correspondence**

**DOJ Civil Rights Division Investigation:**

85. Acknowledgment letter and ongoing correspondence from the U.S. Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section (Report No. 648871-GNF), confirming federal review of Plaintiff's complaint and the materiality of the property and evidence at issue.

**Municipal and Regulatory Records:**

**86.** City inspection reports, elevator license records, and other official documents evidencing code violations, expired licenses, and the hazardous condition of the premises.

## V. Additional Supporting Materials

**Witness Statements:**

**87.** Declarations or affidavits from other tenants, building staff, or third parties corroborating Plaintiff's account of hazardous conditions, selective maintenance, and retaliatory conduct.

**Medical and Financial Records:**

**88.** Documentation of injuries, health impacts (e.g., bedbug bites suffered by Plaintiff's child), and financial losses resulting from displacement, loss of property, and denial of access to amenities.

**Inventory of Lost or Withheld Property:**

**89.** Detailed lists of personal, financial, and legal items left behind or taken during the eviction, including the Blink camera, electronics, documents, and other irreplaceable property.

## VI. Spoliation and Preservation Issues

90. Plaintiff has made repeated, documented demands for the preservation and return of all property and evidence, particularly the Blink surveillance camera and its contents. Defendants' refusal to comply, despite notice of ongoing federal litigation and a DOJ investigation, constitutes spoliation under both Illinois and federal law. Plaintiff reserves the right to seek adverse inferences, sanctions, and other remedies for any destruction or concealment of evidence.

91. This comprehensive body of evidence, including but not limited to the items described above, will be produced in accordance with discovery obligations and is incorporated by reference as the factual foundation for each claim asserted in this complaint. The pattern of violations is not only established by Plaintiff's testimony, but is corroborated by contemporaneous documentation, official records, and third-party statements, all of which will be presented to the Court in support of Plaintiff's claims for relief.

**Damages and Remedies Sought**

92. Plaintiff seeks comprehensive relief to redress the full scope of harm caused by Defendants' pattern of misconduct, including but not limited to:

**A. Compensatory Damages**

I. For loss of use and enjoyment of the premises, personal property, and essential belongings wrongfully withheld, destroyed, or lost during and after eviction.

II. For emotional distress, humiliation, and psychological harm suffered by Plaintiff and his minor child as a result of displacement, harassment, and retaliatory conduct.

III. For financial losses incurred due to forced relocation, hotel stays, loss of property, medical expenses, and denial of access to amenities.

## B. Punitive Damages

For Defendants' willful, malicious, and reckless disregard of Plaintiff's rights, including intentional concealment of hazardous conditions, retaliation, procedural abuses, and spoliation of evidence.

To deter future misconduct and signal the seriousness of systemic violations by corporate landlords.

## C. Statutory Damages

As provided under the Fair Housing Act (42 U.S.C. § 3613), the Chicago Residential Landlord and Tenant Ordinance (RLTO), Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 et seq.), and other applicable statutes.

For each violation of statutory duties, including failure to maintain habitability, retaliatory eviction, deceptive practices, and improper disposal of property.

**D. Injunctive Relief**

I.   Orders enjoining Defendants from further retaliation, harassment, or discriminatory

conduct against Plaintiff or similarly situated tenants.

II.  Orders requiring Defendants to preserve, return, or provide access to all property and

evidence wrongfully withheld or destroyed, including the Blink surveillance camera

and its contents.

III. Orders compelling Defendants to comply with all applicable housing, consumer

protection, and evidence preservation laws.

**E. Declaratory Relief**

Judicial declarations that Defendants' conduct violated Plaintiff's rights under federal and

state law, and that their pattern of misconduct constitutes unlawful discrimination,

retaliation, and obstruction.

**F. Sanctions and Equitable Remedies**

I.   Sanctions for spoliation of evidence, including adverse inferences, monetary

penalties, and orders to restore Plaintiff's ability to prosecute his claims.

II.  Any other equitable relief necessary to remedy the ongoing harm and prevent future

violations.

III.  Plaintiff further seeks all costs of suit, reasonable attorneys' fees as permitted by law, and pre- and post-judgment interest.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and grant the following relief:

I.  Compensatory damages in an amount to be determined at trial for all actual losses, emotional distress, and financial harm suffered.

II.  Punitive damages sufficient to deter future misconduct and punish Defendants' willful violations.

III.  Statutory damages as provided by the Fair Housing Act, RLTO, Illinois Consumer Fraud Act, and other applicable laws.

IV.  Injunctive orders enjoining Defendants from further retaliation, harassment, and discriminatory conduct, and compelling preservation and return of all property and evidence.

V.  Declaratory judgment that Defendants' conduct violated Plaintiff's rights under federal and state law.

VI.  Sanctions for spoliation of evidence and procedural abuses.

VII. An award of costs, attorneys' fees, and interest as permitted by law.

VIII. Such other and further relief as the Court deems just and proper to fully remedy the harm and hold Defendants accountable for their systemic violations.

93. I, Travis L. Allison, verify under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge, information, and belief.

**Respectfully submitted,**

**/s/ Travis L. Allison**
Travis L. Allison
P.O. Box 4257
Des Plaines, IL 60016
Email: travisallison5@icloud.com
Phone: (773) 383-2609

**Dated:** September 7, 2025